**UNITED STATES of America, Plaintiff–Appellee,**

v.

**George Alan AYERS, Defendant–Appellant.**

**No. 91–1124**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Oct. 29, 1991.

---

Suzanna O. Perez, Asst. Fed. Public Defender, Ira Kirkendoll, Fed. Public Defender, Dallas, Tex., for defendant-appellant.

Rose L. Romero, Asst. U.S. Atty., Marvin Collins, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, and JONES, Circuit Judge, and PARKER, District Judge.*

PER CURIAM:

## I.

George Alan Ayers appeals his sentence imposed upon revocation of his supervised released term. We affirm.

## II.

Ayers was serving a three year term of supervised release, following a conviction and term of imprisonment for possession of stolen mail, in violation of 18 U.S.C. § 1708. Ayers' probation officer filed a petition for action on his supervised release, alleging the following four violations of conditions of release:

*Violation of Condition 1:* Violation of a crime during the term of supervision. On December 31, 1990, and January 7, 1991, Mr. Ayers fraudulently withdrew $250.00 and $300.00 respectfully [sic], from American Federal Bank with the account of Nationwide Buyers, knowing he was unauthorized to receive money from this account.

*Violation of Condition 3:* Failure to report to probation officer as directed. Mr. Ayers was instructed to report to the probation office on January 7, 1991. He failed to report as instructed.

*Violation of Condition 4:* Failure to answer truthful inquiries by the probation officer. On December 31, 1990, Mr. Ayers was asked his residence and employment. He advised this officer that he lived at 408 Grandview, Dallas, Texas. A later investigation revealed that he was not living at this address as stated. Mr. Ayers also stated he worked for Nationwide Buyers, when he had been terminated from that employment on December 27, 1990.

*Violation of Condition 7:* Failure to notify the probation officer within 72 hours of change in residence or employment. Mr. Ayers has failed to notify this officer of his new residence or employment, and his whereabouts are unknown.

Ayers pleaded true to violating conditions 3 and 7 and not true to violating conditions 1 and 4.

Prior to the revocation hearing, Ayers received notice of the alleged violations. He also was furnished photocopies of the withdrawal slips relating to condition 1. At the hearing, the government offered in evidence the signature card for the bank account. Ayers objected, arguing that the card had not been disclosed to him prior to the hearing and, therefore, was inadmissible under FED.R.CRIM.P. 32.1. The court overruled his objection.

The court found that Ayers violated all four conditions and sentenced him to two years imprisonment.

## III.

On appeal Ayers raises two challenges to the sentence imposed by the district court. Ayers alleges that the court: (A) violated his due process rights in admitting evidence that was not disclosed to him prior to the revocation hearing, and (B) misapplied the Sentencing Guidelines in sentencing him to a two year term of imprisonment without proof that his violation was a Grade B violation under the United States Sentencing Guidelines (U.S.S.G.).

### A. *Due Process Violation?*

Procedural due process rights apply in revocation hearings. *Morrissey v. Brewer,* 408 U.S. 471, 488–90, 92 S.Ct. 2593, 2603–05, 33 L.Ed.2d 484 (1972). A minimal requirement is that the defendant be given "disclosure of the evidence against" him. FED.R.CRIM.P. 32.1(a)(2)(B). More flexibility, however, is allowed in these hearings than in an adversary criminal trial. *Morrissey,* 408 U.S. at 488–90, 92 S.Ct. at 2603–05.

Ayers' allegation—that his due process rights were violated by the court's admission of evidence that was not disclosed to him *prior* to the hearing—must be considered in light of the "nature" of a revoca-

---

* Chief District Judge of the Eastern District of Texas, sitting by designation.

tion hearing. "The hearing required by 32.1(a)(2) is not a formal trial; the usual rules of evidence need not be applied. See *Morrissey v. Brewer,* supra ('the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial') ..." FED. R.CRIM.P. 32.1(a)(2), notes of advisory committee on rules. *See also Black v. Romano,* 471 U.S. 606, 610–14, 105 S.Ct. 2254, 2257–59, 85 L.Ed.2d 636 (1985).

■ Prior to the hearing, Ayers knew that he was accused of withdrawing funds from Nationwide Buyer's account at American Federal Bank. He was furnished, in advance of the hearing, with copies of the deposit slips, containing: the name of the account, the account number, the amount of funds to be withdrawn, and his alleged signature.

The signature card was disclosed to him at the hearing. Ayers did not request a continuance to consider the signature card after its disclosure. He was given the opportunity to fully cross-examine each of the government's witnesses.

Under these circumstances, admission of the signature card in evidence at the revocation hearing did not affect Ayers' substantial rights and is not reversible error. 28 U.S.C. § 2111.

### B. Misapplication of Guidelines?

Ayers' supervised release was for violation of a statutory Class C felony. The district court sentenced Ayers to two years imprisonment, which is the maximum permissible sentence where the offense of conviction is a Class C felony. *See* 18 U.S.C. § 3583(e)(3).

On appeal Ayers contends that the district court erred in sentencing him to two years in the absence of proof that his violation constituted a Grade B violation under U.S.S.G. § 7B1.1, p.s. Ayers' argument is, in effect, that the policy statements issued by the Sentencing Commission for violations of probation and supervised release are binding and that the court erred in not applying them.

### 1. Force of policy statements?

On November 1, 1990, the Sentencing Commission issued policy statements applicable to violations of probation and supervised release. U.S.S.G. Ch. 7. There the Commission stated:

> [a]t this time, the Commission has chosen to promulgate policy statements only. These policy statements *will provide guidance* while allowing for the identification of any substantive or procedural issues that require further review. The Commission views these policy statements as evolutionary and will review relevant data and materials concerning revocation determinations under these policy statements. Revocation guidelines will be issued after federal judges, probation officers, practitioners, and others have had the opportunity to evaluate and comment on these policy statements.

U.S.S.G. Ch. 7, Pt. A 1, intro. comment (emphasis added). The Sentencing Commission did not indicate whether the policy statements were intended to be binding on the courts. The question has not been addressed by this circuit.

The introductory material indicates that the Commission issued "advisory policy statements" to afford "greater flexibility ... [and] better opportunities for evaluation by the courts and the Commission." U.S.S.G. Ch. 7, Pt. A 3(a). There is some indication that the Commission intended that "upon revocation the court *should consider* any applicable policy statements." United States Sentencing Commission Questions Most Frequently Asked About the Sentencing Guidelines 3 (March 1, 1990) (Question 15) (emphasis added). There is also indication that the Commission set forth only "limited guidance" for the courts. *Id.* (Question 67).

■ Even if the policy statements are not *binding* on the courts, the court should *consider* them in sentencing defendants. *See* 18 U.S.C. §§ 3553(a)(5), 3583(e). *See also United States v. Fallin,* 946 F.2d 57, 58 (8th Cir.1991); *United States v. Blackston,* 940 F.2d 877, 892–94 (3rd Cir.1991).

**2. Consideration by the district court?**

Before sentencing Ayers, the judge stated:

> [The offense of conviction] is a Class C Felony and the maximum term for revocation of supervised release on a Class C Felony is not more than two years pursuant to 18 USC 3583(e)(3). On a *Guideline* situation, which we have determined is *not applicable*, the top would be twenty-seven months but *I do not go by the Guidelines but by the statutory maximum* and I would be glad to hear from you before I sentence and also from Mr. Ayers. (Emphasis added.)

These statements could be construed to mean that the judge did consider the policy statements ("that the top would be twenty-seven months"), but decided that they were not applicable here. The same statements, however, are susceptible to the interpretation that the judge did not consider the policy statements ("I do not go by the Guidelines"). Assuming that the policy statements were not properly considered, the next question is whether there is reversible error.

**3. Plain error.**

 Ayers did not object or otherwise raise this issue at the revocation hearing. We will not review alleged errors raised for the first time on appeal absent "plain error." *United States v. Brunson,* 915 F.2d 942, 944 (5th Cir.1990). *See* FED.R.CRIM.P. 52(b). Plain error is error which, when examined in the context of the entire case, is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity, or public reputation of the judicial proceedings. *Permian Petroleum Co. v. Petroleos Mexicanos,* 934 F.2d 635, 647 (5th Cir.1991); *United States v. Guzman,* 781 F.2d 428, 431–32 (5th Cir.1986), *cert. denied,* 475 U.S. 1143, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986).

 Under the policy statements, upon a finding of a Grade B violation the court shall revoke supervised release. Upon a finding of a Grade C violation, however, the court may revoke supervised release *or* extend the term or modify the conditions of supervised release. U.S.S.G. § 7B1.3(a), p.s. The presentence investigation report, prepared when Ayers was originally sentenced, indicated a criminal history category of VI. Therefore, the policy statements provide for, upon revocation of supervised release, an imprisonment range of 21–27 months for a Grade B violation, but only 8–14 months for a Grade C violation. U.S.S.G. § 7B1.4(a), p.s. Ayers correctly argues that there was no determination in the record as to whether violation of condition 1 was a Grade B or Grade C violation.

The district court had discretion to impose the same sentence as that pronounced. We presume that the court imposed such sentence because it was the appropriate sentence under all the circumstances of this case. The failure to articulate a consideration of the policy statements was not plain error.

### IV.

The judgment of the district court is AFFIRMED.